v. Appellant. With the court's permission, I would like to submit the third issue on the briefs, being the matter of whether the VA may simultaneously pursue its remedy to offset and recoup the same debt. And confine my remarks to the briefs. I didn't catch what you said. I would like to submit on the briefs the matter of whether or not VA may simultaneously exercise the remedy of offset and recoupment to collect the same debt. You're not going to argue that point before us? No, Your Honor, although I'd be pleased to respond to any questions the court might have about that. I would like to confine my remarks to the first two issues. Counsel, just for purposes in the future, it would be good if you'd let us know beforehand if you're not going to argue a particular issue. That way, it really saves on judicial resources to know what's going to be argued and what's not. I beg your pardon, Your Honor, and I will do so in the future. Although, as you know, you don't determine what's going to be argued. We determine what's going to be argued. Well, I'm aware of that, too, Your Honor. So I am prepared to argue. Does this mean you want to focus on the statute? It does. It does, Your Honor. The issue before me is offset language. We agree, the parties agree, that VA has a right to withhold Title 38 benefits where the claimant has also entered into a settlement or obtained a judgment for damages arising out of the same injury. And we also agree that the purpose is to avoid a duplicate recovery. Is the nub of your dispute between you and the government that you're saying final means after the check is cut and they're saying final means after the parties have signed the agreement on the dotted line? Precisely, Your Honor. The nub of the disagreement is what is the event that triggers VA's right to commence withholding. Yeah. And, you know, what we have to go on, all of us, is our experience. And it seems to me, it doesn't sound far-fetched to suggest that a final settlement is one in which the parties execute. When they execute a contract, the contract is final, even if the terms of the contract haven't been completely, if nothing's been paid out, if the money hasn't been, the checks haven't been cashed. Am I wrong about that? Well... That traditionally we think of the term final as being when the parties conclude their agreement? I would think of the agreement being concluded upon performance of the parties' obligations under the agreement. And in this particular case, the legislative history is consistent with Mrs. Sowell's position. Well, you can have an agreement with performance to be conducted in the future, but once you enter into an agreement and you execute it, doesn't it go into legal effect at that point in time and any lack of performance in the future? Wouldn't that be a breach of the agreement? Well, we're looking at the purpose of being final for commencing the offset remedy. The legislative history shows that the Congress intended that VA would have paid the settlement or paid the judgment. The legislative history is cited by the government at page 14 of its brief. It is Senate Report 87-2042, and at the same page that the government cites for authority that the purpose is to avoid duplicate payment... We are arguing that the government did not pay the full settlement amount, and that payment in full is what is required before VA can commence its withholding, commence the offset. In other words, so this issue, this dispute is about $7,000 because that's the amount that was recouped before the settlement became final? No, Your Honor, this dispute is about $200,000. There are two agreements. There were two essential causes of action, several parties being several family members. Two essential causes of action, the pre-death injuries and the post-death injuries. So is that issue before us, so we're supposed to decide in this case whether or not the government really owes only one amount, $200,000, or whether it owes $400,000? No, Your Honor, that is not before the court. Okay. What is before the court is the fact that that issue was before the CAVC, and the CAVC said it's not relevant, but it is relevant under the statute because payment of the settlement is the event which triggers the right to withhold. So if the release, which settled the personal injury actions, not subject to offset in the FTCA action, and the wrongful deaths are part of the same agreement, then by statute the VA must pay the settlement before it's right to offset. Let me see if I understand. Let me see if I understand. Yes. So there's presumably some ongoing dispute out there in the ether that's not before us to decide whether or not the government was indeed obligated to make two payments. Correct. Under your view, it was. It's never paid the second because they're disputing that they had to. So your view is up until this day, the offset hasn't started to run. Is that what you're saying? Well, the offset has, in fact, been implemented, but we're saying up until this day because VA has not paid the settlement, being the second $200,000 payment, the implementation of offset is not authorized. No, VA could correct that by just paying the $200,000. Who drafted those documents? I don't know, Your Honor. I was not involved in the FTCA litigation. In fact, I was not involved in this case at all until the case was before the Veterans Court. When I look at this and I look at the end of your argument and what that gets you, I'm left with a feeling that I want you to address, and that's that you received double payment. Which, under your argument, is it's not a double payment. It's two different payments. But the double payment seems to still nag at me, especially in view of the congressional or the statute and some of the congressional history cited by the government. Can you address that? Aren't you looking to get double payment? To be paid twice for the same settlement? To be paid twice. No, we are not, Your Honor, because the release in covenant not to sue settled causes of action that were unrelated to the wrongful death, which was settled by the stipulation. Each one provided for payments of a total of $200,000 to the government. But doesn't the agreement say that one will supplant the other? In fact, the agreement says at the end that it clearly contemplates that there may be other agreements because the language on the last page of the agreement, excuse me, the last page of the stipulation, this would be at page 47 of the appendix, says that the parties agree that the stipulation compromise settlement and release including all the terms and conditions of this compromise settlement and any additional agreements relating thereto may be made public in their entirety. So clearly there's no need to have that language if there wasn't a contemplation. You're alleging that there are two agreements, one for wrongful death and one for pain and suffering, loss of consortium and everything else. Prior to death, yes. So I asked you a question, and I asked you a question about who drafted it because the drafting in here is incredibly sloppy. I would agree, Your Honor. And I want you to address, and as a lawyer, if I was the lawyer for the appellant, I found out who drafted this thing because I want to know who bears the burden on me. But if the government drafted this document, it may bear a responsibility for the sloppiness of it. But you're not telling me. I want you to address if the government did draft it, what the law is. My inquiry to the Plaintiff's Counsel led me to believe that the government had drafted it because he did refer to possible sloppy drafting or inarticulate drafting. I don't recall his precise word, but that was the import, that it was sloppy drafting on the part of the government. Now, that doesn't answer for me, nor do I have any way to put in the record at the CAVC or here, who drafted, who had the input. No, but I'm going to ask the government the same question, and they're going to tell me. So address it as if the government drafted it. What are the responsibilities on both sides? Well, if the government drafted it, then the contract would be construed most favorably against the drafter as a matter of law. Well, in this instance, the person who's drafting it also bears a responsibility to a veteran. So address that. Are you referring to the government lawyers? Assume the government lawyer drafted it. What is his responsibility to the veteran? Within the context of the FTCA, I don't think he has a responsibility to the veteran. But let me just recap, though, where we are. You started by acknowledging the only issue, the real issue, the only issue before us is whether or not how we construe the statute in terms of whether or not the settlement was final. If we decide that we disagree with your position, and therefore it was final, then you don't prevail. We don't reach the issue. We don't need to reach in any way, shape, or form the issue of these competing agreements, right? Well, I think we do, because I don't believe it's within the jurisdiction of the Federal Circuit to make a determination on what the settlement is, because that's a mixed finding of fact and law, and the Veterans Court did not address it. What the Veterans Court said was, let's assume that you are right, appellant. No, but if we disagree with your legal position, the issue, as I understood, so you've got to explain to me why not. I understood the issue before us was whether or not under 1151B, final settlement or final judgment language applies to when a document is signed as opposed to when it's ultimately paid out, right? Yes, yes. So if we reject your argument in that regard, and we say the clock starts to run when the document is signed, then why is that not the end of the case? It is the end of the case. It is the end of the case, Your Honor, but it's very important, if I may just for a moment, cite back to the legislative history, which the place is cited in the government's brief.  The language, and it's in the same paragraph, legislative history recognizes or acknowledges where the claimant has been awarded a judgment or entered into a settlement under the FTCA that no benefits authorized by Section 351, which is current 1151, shall be paid to that individual thereafter on account of that disability or death until the total amount of benefits, which would be paid except for this provision, equals the total amount paid under the judgment settlement for compromise. Congress clearly intended, in my view, that VA would perform before VA could commence its offset. Thank you. We've got some rebuttal time left. Thank you, Your Honor. We'll hear from the government now. Ms. Hossford. May it please the Court. The Court should affirm the decision below because VA... Ms. Hossford, why don't you answer my question? You know it's there. Your Honor, the answer to your question is I don't know who was responsible for drafting that settlement agreement. I know that an assistant U.S. attorney in Ohio represented the government, and I know that a lawyer in New York named Mr. Vallee represented Ms. Solis at the time. I also know that the judgment, the settlement, the case was dismissed in January 2005. The settlement was signed in January 2006. The district court judge in that case signed off on the settlement agreement in late January 2006. In March of 2006, the judgment was paid, and in March of 2006, the whole process of offset was initiated in this case. I would also note that the settlement agreement provided that Ms. Solis, as an attorney, should take the settlement proceeds and distribute them to the plaintiffs. At no point between March 2006 and 2009, when Ms. Solis filed her appeal with the Court of Appeals for the Veterans Claims, did she ever claim that she was not paid the full amount of judgment or that there had been any breach of contract in this case. That is the very first time this issue ever came up, and on page JA5 of the appendix, the Court of Appeals for the Veterans Claims acknowledges that and says, wait, if she thought that she hadn't been paid her full judgment, she should have gone back to the district court. And we don't even have jurisdiction to interpret this contract in the manner that Ms. Solis is obliged to. And also, the evidence of record doesn't establish that she was not paid any of the judgments she was due. So the whole issue of contract interpretation should have been brought to the district court, which did retain some jurisdiction at the appropriate time. Was it $100,000 or $200,000? The settlement was for $200,000. That settled all claims, wrongful death and personal injury. But the settlement agreement did provide that the allocation of her money, the $100,000, was to the wrongful death claim. Just getting into details that are outside the record, the court… What's the rationale for the offset? What happens in these cases, in this case, unfortunately, it's a very sad situation, Mr. Solis died as a result of negligence of the VA in the hospital, in treating him. For that reason, Ms. Solis was entitled to obtain benefits because VA caused the death. The FTCA also allowed her to file suit for damages as a result of the same action, the action by VA in causing his death. So there's essentially a duplicative recovery. Now, if she had recovered a million dollars, she would have had… Why is it duplicative? One is for tort and the other one is for veterans' benefits. The way Congress viewed it and the way 1151 was enacted was that duplicative recovery. She's recovering VA benefits because VA had a hand in her husband's death and she recovers a tort judgment because VA had a hand in her husband's death. 1151 is very clear about that. Ms. Horsford, let me read to you. For and in consideration of $100,000, which by my calculations is $10 million, paren, $200,000 in numbers, close paren. That's the release from covenant not to sue. When I said sloppy, I meant abysmally. Your Honor, I can't disagree that the agreements are not clear. But Ms. Solis was represented by counsel at the time who we have to assume had a role in the negotiation and potentially drafting of these agreements and told her it was okay to sign this agreement and oversaw the distribution of the settlement proceeds to her. Never once did they approach the district court to say that VA didn't pay the full amount. Never once. If Ms. Solis still believes she's owed another $200,000, then the appropriate relief is to go to the district court and obtain an interpretation of the settlement agreement or at the very least the court of federal claims depending on who you think has jurisdiction. But the bottom line is here that 1151B1 expressly provides that offset occurs when the settlement or judgment is final. There is no basis upon which to conclude that Congress meant that in any manner other than its ordinary terms. Ms. Booth has not provided any evidence to the contrary. She read from the legislative history, but that just says settlement judgment be paid, meaning that the judgment provides repayment of, in this case, $200,000. If you read Ms. Booth's reply brief, it becomes clear that the primary basis of her interpretation of 1151B1 seems to be based on her assumption that Congress thought that the VA had an incentive to renege on its settlement agreement or engage in some sort of self-help. I think she used the term unjust enrichment. There's absolutely no evidence or no indication anywhere that Congress thought that the VA, if it were subject to a judgment, was going to renege and not pay. Is Ms. Solis currently receiving any benefits at all? From the VA? Right. Her DIC benefits are being offset currently. Which no one is disputing under that? No. But apparently because the agreement says to suspend and offset, at some point they're going to continue this. Yes, there's about $35,000 in offset left to occur. And then at the end of that point? Her benefits will resume. Okay. I just want to briefly touch on Section 1318, which is the provision. I don't know if the courts had a chance to look it up. It was a provision Ms. Solis cited in her 28J letter. That provision is completely different from 1151 and, in fact, supports our interpretation of 1151 because it says under the circumstances applicable in those cases, an offset doesn't happen until receipt of payment or property. What about the legislative history that Ms. Solis cited to us? Why doesn't that help her in terms of her interpretation? My reading of that legislative history means that they're talking about the reference to payment of a judgment in the agreement itself. They're not saying that you have to have received the money. I mean, 1318 provides an example of where the offset has to be upon receipt of the money. There's no evidence that Congress said that, well, once payment is in hand, then you can offset. They said offset happens at the time of final settlement, final judgment. And there's no evidence that they meant anything other than the ordinary interpretation of that term. Like I said, other than that one reference from legislative history, Ms. Booth has not referenced any legislative history that is contrary. With respect to, and then I would also point that even if Ms. Solis' interpretation were correct, the Court of Appeals for Veterans Claims expressly held that there's no evidence of nonpayment of any judgment here. So even if it had to be upon payment, she's not made her case that she was owed more money. With respect to the $7,000 issue, I'll just briefly touch on that. I have to suspect that Ms. Booth is not pursuing that any further because there's really no basis for that argument. What happened was Ms. Solis got notice in March of 2006 that the offset was to occur, but that because of regulatory notices, hearing requirements and delays, that the money would continue to come for several months and that she should bear in mind that that's really supposed to be part of the offset. So she was paid through August of 2006 and at that time told, look, you never objected to the offset, so you've paid $7,000 already, so we're going to start withholding for that in December.  doesn't mean that it wasn't subject to the offset. But there's no evidence in the record that the VA was going to collect an offset any more than the $100,000 that it was entitled to, and Ms. Booth has pointed to no evidence in the record that that was the case. The only offset here is $100,000, not $107,000. Ms. Solis does not owe the government $7,000 cash. She doesn't have to pay them in any way other than through the offset. Unless the Court has any other questions, I will pass this to defer. Thank you. Thank you, Your Honor. Under the canons of construction, whether Ohio law, which is below the forum in this FTCA case, or whether it's under federal law, a series of agreements signed by the same parties regarding the same general transaction around the same time are read together as one agreement. That issue isn't before us, right? That issue is something, as the government pointed out, go to the District Court, maybe the Court of Claims. The CABC said that they don't get to decide that issue, and how is it properly before us? The CABC said it was not relevant, but there is no way to determine what the settlement is if you don't know what the settlement documents are. You cannot... I mean, the contingency, the statutory condition preceding to implementing withholding under 1151B1 is that there be a final settlement or a final judgment, whichever. So, number one, what does final mean? Does it mean when they sign it? Does it mean when they pay? Number two, how much do they have to pay? And if we don't know how much they have to pay, you can never determine whether or not it's final. But again, I'm saying this is not for the court, but rather the CABC erred when it said that it is not relevant to the determination of whether or not there is a final settlement for purposes of commencing the 1151 withholding. A couple of other matters I wanted to respond to. First of all, we're not contending that Congress thought VA was going to do something nefarious. We're contending that Congress did not intend that the door would be open for VA to do that, which is exactly what's happening here. The VA has agreed through the release, which is granted, the drafting is not perfect by any means. But for in consideration of $200,000, Mrs. Soles and all of her family members released all of their personal injury claims. The stipulation to settle the wrongful debt expressly says none of this is for any purpose except payment of wrongful debt. I believe it even specifically excludes payment of personal injury. And finally, regarding the $7,000 matter, all Mrs. Soles objects to is being asked to pay $107,000 before her DIC starts again. The fact that the VA continued to pay her for six months, which is when the $7,000 accumulated, did nothing to VA except push back the commencement of its offset, the commencement of withholding. So at the end of the day, VA will still withhold $100,000, and yet it has also said they're going to recoup the $7,000. Now, if the court acknowledges in an opinion that Mrs. Soles can enforce what the government has admitted here today, that they will never collect more than $100,000 from her, she's happy. As to the $7,000? She's happy as to the $7,000? As to the $7,000, yes. Yes, Your Honor. Well, the government offered you that assurance. Thank you, Your Honor. The case is submitted. Thank you, counsel.